IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

CHICAGO INSURANCE COMPANY, )
                           )
     Plaintiff,            )
                           )
v.                         )      No. 03-2337 Ma/A
                           )
DHS/Diversified Health     )
Services, Inc., general    )
partner of BEP SERVICES, L.P.,)
formerly known as          )
SERVICEMASTER DIVERSIFIED   )
HEALTH SERVICES, L.P.,     )
                           )
     Defendant.            )

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

Before the court are the motion for summary judgment filed by Plaintiff Chicago Insurance Company ("Chicago") and the cross motion for summary judgment, or alternatively for stay, of Defendant/Third-Party Plaintiff DHS/Diversified Health Services, Inc., general partner of BEP Services, L.P., formerly known as Service Master Diversified Health Services, L.P. ("BEP"). Chicago filed its motion on January 18, 2005; BEP and third-party Defendant Marsh USA, Inc. ("Marsh") responded on March 18, 2005. BEP filed its cross motion on March 18, 2005, and Chicago responded on April 18, 2005. For the following reasons, Chicago's motion is GRANTED, and BEP's motion is DENIED.

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on 4-21-05

## I. Background

This declaratory judgment action arises from Chicago's claim that certain nursing home facilities owned by BEP are not covered under insurance policies issued by Chicago. Chicago is an Illinois company with its principal place of business in Chicago, Illinois. (Compl. at ¶ 5.) DHS/Diversified Health Services, Inc. ("DHS") is a Delaware corporation with its principal place of business in Germantown, Tennessee. (Id. at ¶ 6.) BEP is a Tennessee limited partnership with its principal place of business in Memphis, Tennessee. (Id.) DHS is a general partner of BEP (BEP was formerly known as ServiceMaster Diversified Health Services, L.P.). (Id.)

BEP operates a number of nursing home facilities. (Def.'s Mot. at 2.) To decrease its risk, BEP purchased several insurance policies. (Id. at 1.) BEP purchased its primary insurance from CIGNA and CNA for the policy years 1997-1998, 1998-1999 and 1999-2000. (Def.'s Stat. of Facts ¶ 4.) BEP also purchased excess policies from Chicago for those years, which indemnified BEP for liability accrued in excess of the policy limits of the primary insurance. (Compl. at ¶ 7.) The primary coverage was limited to $1 million per claim, with an aggregate limit of $3 million dollars per location. (Id.) The excess policy was for $25 million per occurrence and aggregate and contained a clause requiring BEP to maintain the primary coverage of $1 million per claim with an aggregate limit of $3 million per location. (Compl. at ¶ 7.)

2

At least four lawsuits have been filed against BEP based on incidents that allegedly occurred in its nursing home facilities. (Def.'s Stat. of Facts ¶¶ 1-2, 23.)  At least three of those lawsuits involve the Shelby County Oakville Healthcare Center in Shelby County, Tennessee ("Oakville") or the Shelby County Healthcare Center ("the Mullins Station Road facility"). (Id. ¶ 23.) On February 5, 2003, an adjuster working on behalf of Transportation Insurance informed Chicago that the aggregate limits of the primary policy had been met.[1] (Compl. at Ex. G.) The adjuster incorrectly read the policy limits as $3 million in the aggregate for all locations rather than $3 million in the aggregate per location. (Def.'s Stat. of Facts ¶ 22.)

In the course of its investigation, Chicago discovered that neither Oakville nor the Mullins Station Road facility had been listed as a designated premises on the excess policies. (Compl. at ¶ 9.)  The excess policies at issue provide: "This policy applies solely to claims arising out of the ownership, maintenance, or use by the 'Named Insured,' of the 'Designated Premises' and operations necessary and incidental thereto." (Compl. at Ex. C; hereinafter "the Designated Premises Endorsement.")"  This provision appears under the heading "Designated Premises" and state that "this endorsement changes the policy.  Please read it carefully." (Id.)

---

[1] Chicago was actually informed sometime before that date by telephone. (Compl. at Ex. G.) The record does not indicate the date of that conversation, but a confirmatory letter was sent on February 5, 2003. (Id.)

3

Neither Oakville nor the Mullins Station Road facility appears on the list of Designated Premises. Chicago seeks a declaratory judgment that, based on this language, Chicago has no duty to defend suits brought against Oakville or the Mullins Station Road facility or to indemnify BEP for any losses above the primary coverage limits at those facilities. (Compl. at ¶ 26-30.)

BEP claims that there is no actual case or controversy before the court and that the disputed facilities are within the scope of the policy's coverage.

## II. Jurisdiction

The parties to this action are diverse, and the amount in controversy is greater than $75,000. If there is a ripe case or controversy, the court has jurisdiction under 28 U.S.C. § 1332.

The court decided that this declaratory judgment action presented a case or controversy when it denied BEP's motion to dismiss on November 6, 2003. BEP has not cited any new facts or law that would merit reconsideration of that decision. BEP argues that the original claims giving rise to this case have been resolved without exceeding the underlying policy limits and that there is no longer any controversy about the question of excess coverage. BEP also states, however, that other pending claims arise from Oakville and the Mullins State Road facility, which are at the center of the coverage dispute. Thus, the question of excess coverage remains live, although BEP's primary coverage

4

limits have not yet been exhausted.

"Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995). Although BEP claims that it has not yet made demand on Chicago to defend or indemnify it, BEP contends that Chicago is liable under the secondary coverage policy for pending claims arising from Oakville and the Mullins State Road facility. As explained in the court's prior order, courts within the Sixth Circuit regularly entertain declaratory judgment actions by insurers seeking declarations, upon the filing of suit against the insured, that they have no duty to defend or indemnify the insured under the policy issued. See, e.g., Northland Ins. Co. v. Stewart Title Guar. Co., 327 F.3d 448 (6th Cir. 2003) (approving district court's holding that insurer had no duty to defend where theories of recovery not covered by policy); Aetna Cas. & Sur. Co. v. Sunshine Corp., 74 F.3d 685 (6th Cir. 1996) (approving district court's holding that policy exclusion for willful conduct excused insurer's duty to defend).

"It is well settled that jurisdiction to grant relief under the Declaratory Judgment Act, 28 U.S.C. 2201, et seq., is discretionary." Aetna Cas. & Sur. Co., 74 F.3d at 687. In deciding whether to entertain a declaratory judgment action, courts generally consider 1) whether a judgment would settle the

5

controversy, 2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations of the parties, 3) whether the declaratory remedy is being used merely for "procedural fencing" or "to provide an arena for a race for res judicata," 4) whether the use of a declaratory judgment action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction, and 5) whether there is an alternative remedy that is more effective or better. Northland Ins., 327 F.3d at 453; Scottsdale Ins. Co. v. Roumph, 211 F.3d 964, 968 (6th Cir. 2000).

As to the first two factors, although declaratory judgment would not settle the underlying claims against BEP, "it would settle the controversy regarding the scope of insurance coverage" between Chicago and BEP. Northland Ins., 327 F.3d at 454. "A prompt declaration of policy coverage would surely serve the useful purpose in clarifying the legal relations at issue." Id. (quoting Roumph, 211 F.3d at 968.

As in Northland, Chicago "filed this action only after it became apparent that its insured[] had no colorable claim to coverage or a defense," and it should not be forced to participate in state actions when it has no duty to defend those actions. Id. Because Chicago is not a party to the state court actions, it will not be bound by the state courts' decisions, so there is no "race for res judicata." Id. Thus, the third factor also weighs in favor

of entertaining a declaratory judgment action.

In determining whether exercising declaratory judgment jurisdiction would increase friction between federal and state courts, a district court is to consider 1) whether the underlying factual issues are important to an informed resolution of the case, 2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court, and 3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates resolution of the declaratory action. Id. (citing Roumph, 211 F.3d at 968). Chicago is not a party to the pending state actions, and "neither the scope of insurance coverage nor the obligation to defend [is] before the state court" in those actions. Id. Thus, this dispute does not depend on the resolution of any factual issues in state court. Further, because this court must apply the choice-of-law rules of Tennessee, the same state in which the underlying claims against BEP are pending, no state law or policy would be frustrated by this court's exercise of jurisdiction. See id.

Finally, Chicago's alternative remedies are to wait indefinitely to be sued by BEP under the policies or to intervene in the pending state actions, which it claims no obligation to defend. As in Northland, "intervening in the state court action would not necessarily have provided a better or more effective

7

alternative remedy." Id.

All five factors weigh in favor of exercising jurisdiction.

### III. Legal Standard

The party moving for summary judgment "bears the burden of clearly and convincingly establishing the nonexistence of any genuine issue of material fact, and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986). The moving party can meet this burden by pointing out to the court that the respondents, having had sufficient opportunity for discovery, have no evidence to support an essential element of their case. See Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).

When confronted with a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. A genuine issue for trial exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party opposing the motion must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party may not oppose a properly supported summary judgment motion by mere reliance on the pleadings. See Celotex Corp. v. Catrett, 477 U.S.

317, 324 (1986). Instead, the nonmoving party must present "concrete evidence supporting its claims." Cloverdale Equip. Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989). The district court does not have the duty to search the record for such evidence. See InterRoyal Corp. v. Sponseller, 889 F.2d 108, 110-11 (6th Cir. 1989). Nonmovants have the duty to point out specific evidence in the record that would be sufficient to justify a jury decision in their favor. See id.

## IV. Applicable Law

Tennessee law applies to a policy coverage dispute between an insured citizen of Tennessee and an insurer licensed to do business in Tennessee. First Am. Nat'l Bank v. Fidelity & Deposit Co. of Maryland, 5 F.3d 982 (6th Cir. 1993)(citing Tenn. Code Ann. § 56-7-102). Further, both parties rely on Tennessee law for their arguments about the scope of policy coverage. Persuasive authority suggests that the parties' reliance weighs in favor of applying Tennessee law. See Massachusetts Bay Ins. Co. v. Vic Koenig Leasing, Inc., 136 F.3d 1116, 1120 (7th Cir. 1998)("a federal court should apply the law of the forum state where the parties have not identified a conflict between two bodies of state law which might apply to their case"); Crown Foodservice Group, Inc. v. Hughes, 1999 WL 33117269, at *4, FN 5 (S.D. Ohio 1999)(citing Echo, Inc. v. Whitson Co. Inc., 52 F.3d 702, 707 (7th Cir. 1995)). Therefore, the court will interpret the parties' insurance policy according to Tennessee law.

## V. Chicago's Motion

Chicago argues that it is entitled to summary judgment because the policy unambiguously excludes claims arising from Oakville and the Mullins State Road facility. BEP argues that the contract terms in question are ambiguous and that further evidence is required to discern whether the policy covers the disputed claims. Because the interpretation of an insurance contract is largely an issue of law, a dispute over coverage is usually amenable to resolution by summary judgment. See Corrington v. Equitable Life Assurace Soc'y of the United States, 265 F. Supp. 2d 905, 909 (W.D. Tenn. 2003). An insurance policy is a contract and, like any other contract, should be interpreted according to its terms. Davidson Hotel Co. v. St. Paul Fire & Marine Ins. Co., 136 F. Supp. 2d 901, 905 (W.D. Tenn. 2001). "[W]hen the factual issues are not in dispute, the legal issues regarding a policy's coverage may be resolved by summary judgment." Merrimack Mutual Fire Ins. Co. v. Batts, 59 S.W.3d 142, 148 (Tenn. Ct. App. 2001).

In Tennessee, insurance contracts are construed against the insurer. See Tenn. Farmers Mutual Ins. Co. v. Witt, 857 S.W.2d 26, 29 (Tenn. 1993). The court should give words in the contract their common and ordinary meaning, but resolve all doubts and ambiguities in favor of the insured. Harrell v. Minn. Mut. Life Ins. Co., 937 S.W.2d 809, 814 (Tenn. 1996). The insurance contract should be construed so as to provide coverage if possible. Alcazar v. Hayes, 982 S.W.2d 845, 852 (Tenn. 1998). The goal in interpreting insurance contracts, however, as in interpreting any other

contract, is to give effect to the intentions of the parties. Harrell, 937 S.W.2d at 852.

The excess policies at issue are "follow form" policies, meaning that they largely incorporate the terms of the underlying primary policies, unless those terms "are inconsistent with provisions of [the excess] polic[ies]. (Chicago Mot. Ex. 3(c).) The primary policies, however, do not have a designated premises exclusion. BEP argues that this deviation of the excess policies from the terms of the primary policies renders the Designated Premises Endorsement ambiguous. It is not uncommon, however, for follow-form excess policies to contain specific exclusions not present in the underlying primary policies. See, e.g., GenCorp, Inc. v. American Intern Underwriters, 178 F.3d 804, 820 (6th Cir. 1999)(applying Ohio law and finding endorsements to follow form policy "unambiguous"). The mere fact that a "follow form" policy contains endorsements that narrow its coverage from that of the underlying policy does not mean that those endorsements are ambiguous.

BEP argues further that specific contractual language in the excess policies contradicts the Designated Premises Endorsement. The Schedule of Primary Insurance provided by Chicago states that coverage is provided for "All Premises and Operations of the Insured." (Chicago Mot. Ex. 3(b).) This provision, however, appears merely to indicate, for Chicago's record-keeping purposes, the extent of coverage provided by primary carriers Cigna and CNA. It does not indicate the extent of coverage of Chicago's excess

11

policies. Even if this language were a term of the excess policies, it would constitute a general coverage term from which the Designated Premises Endorsement provides a specific exclusion. There would still be no ambiguity necessitating the introduction of parol evidence. See, e.g., Jones v. Brooks, 696 S.W.2d 885, 886 (Tenn. 1985).

The Designated Premises Endorsement provides that the "policy applies solely to claims arising out of the ownership, maintenance, or use by the Named Insured, of the "Designated Premises" and operations necessary or incidental thereto." BEP does not argue that either Oakville or the Mullins Station Road facility is on the list of "Designated Premises." (BEP Resp. at 12.) Instead, BEP argues that it did not own, maintain, or use those two facilities, but merely provided management personnel. BEP contends, therefore, that the limitation of coverage provided by the Designated Premises Endorsement does not apply to those two facilities and that they are covered under the more general follow-form provisions.

This argument turns the clear meaning of the Designated Premises Endorsement on its head. If, in fact, BEP did not own, maintain, or use Oakville or the Mullins Station Road facility, the Designated Premises Endorsement would exclude those facilities from coverage on two independent grounds: 1) they are not listed as Designated Premises, and 2) BEP has not engaged in the "ownership, maintenance, or use" of those facilities necessary to support a covered claim.

The meaning of the Designated Premises Endorsement is

12

unambiguous. Claims arising from facilities that are not on the list of designated premises are not covered by the excess policies. Thus, there is no genuine issue of material fact that would preclude summary judgment in favor of Chicago on the scope of coverage of the excess policies.

## VI. BEP's Motion

BEP moves for summary judgment on the ground that there is no case or controversy. The court has addressed this issue above and found that a ripe controversy exists. Therefore, BEP's motion is DENIED.

## VII. Conclusion

For the foregoing reasons, the court GRANTS the Plaintiff's motion for summary judgment on the scope of coverage under the written excess policies and DENIES the Defendant's cross motion for summary judgment or alternatively for stay of the proceedings.

So ORDERED this 21st day of April 2005.

_____
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE

13

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 53 in case 2:03-CV-02337 was distributed by fax, mail, or direct printing on April 21, 2005 to the parties listed.

---

John D. Richardson
THE RICHARDSON LAW FIRM
119 S. Main St.
Ste. 725
Memphis, TN 38103

Amy E. Ferguson
GLANKLER BROWN, PLLC
One Commerce Square
Suite 1700
Memphis, TN 38103

Jeffrey A. Goldwater
BOLLINGER RUBERRY & GARVEY
500 West Madison Street
Ste. 2300
Chicago, IL 60661

Larry Montgomery
GLANKLER BROWN, PLLC
One Commerce Square
Suite 1700
Memphis, TN 38103

Vincent P. Tomkiewicz
BOLLINGER RUBERRY & GARVEY
500 West Madison Street
Ste. 2300
Chicago, IL 60661

Robert A. McLean
FARRIS MATHEWS BRANAN BOBANGO HELLEN & DUNLAP, PLC
One Commerce Square
Ste. 2000
Memphis, TN 38103

Honorable Samuel Mays
US DISTRICT COURT